■ In the Matter of AMIRA BEATTY, Appellant, v CITY OF NEW YORK et al., Respondents. [48 NYS3d 393]—

Order and judgment (one paper), Supreme Court, New York County (Margaret A. Chan, J.), entered July 20, 2015, which granted respondents' cross motion to deny the petition seeking to vacate a penalty imposed in an arbitration award dated June 30, 2014, and dismissed the proceeding brought pursuant to CPLR article 75, reversed, on the facts, without costs, the petition granted, and the matter is remanded to respondent New York City Department of Education (DOE) for imposition of a lesser penalty.

The penalty of termination of employment was imposed by a hearing officer upon petitioner, a special education home instruction teacher, based upon the hearing officer's finding that petitioner had submitted time sheets falsely stating that she had provided instruction to a disabled student and inaccurately indicating that she had reported to certain DOE schools and libraries over a two-month period. Notwithstanding petitioner's misconduct, under the circumstances presented here, the penalty of termination shocks our sense of fairness (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]).

At the time of the incident in question, petitioner was faced with an extraordinary situation. Both she and the disabled student resided in Far Rockaway, Queens. On October 29, 2012, that area was damaged extensively by Hurricane Sandy. The homes of both petitioner and the disabled student were flooded and had no power or heat for an extended period, and petitioner lost the use of her car. Both petitioner and her student were displaced from their homes. In the aftermath of this unique disaster, DOE provided teachers with no guidance or information as to the instruction of students displaced by Hurricane Sandy, other than that displaced students would not be penalized. Petitioner contacted the disabled student's mother after the storm, but never provided educational services to the

student. In January 2013, the student's social worker informed petitioner's assistant principal that the student had received no instruction from petitioner since the hurricane. However, that same month, petitioner had submitted documentation saying that she had provided such instruction. A subsequent investigation revealed that petitioner's time sheets contained the false information.

As the Court of Appeals has explained, and as we have recently reiterated, "a result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed. There is also the element that the sanctions reflect the standards of society to be applied to the offense involved" (*Matter of Bolt v New York City Dept. of Educ.*, 145 AD3d 450, 451 [1st Dept 2016], quoting *Pell*, 34 NY2d at 234).

Petitioner filled out the time sheets in question in advance of the dates to which those time sheets pertained. Although she did not, in fact, proceed to provide instruction to the disabled student on the days set forth in those time sheets, she submitted the time sheets without correction on a subsequent date. Because petitioner instructed other students on each of the dates in question, she would have received the same salary regardless of how many students she had instructed or how many hours she had spent with them, and thus derived no benefit from her actions. Petitioner's misconduct is more a matter of lax bookkeeping than implementation of any venal scheme. There was no scheme to defraud or theft of services on petitioner's part, and the harm to the public and to the DOE was mitigated.

Furthermore, before the incident in question, petitioner had an unblemished record over a 17-year period as a special education home instruction teacher. At the DOE hearing, the disabled student's mother testified that petitioner was a good teacher who worked well with her son and had served his needs more successfully than had other teachers. Petitioner's principal testified that before this incident, she had never received a complaint about petitioner. And one of petitioner's coworkers, another special education teacher in the homebound

program, testified that petitioner was a dedicated teacher who did everything she could to help her students excel.

At the hearing, petitioner admitted that she was guilty of submitting reports stating that she had provided instruction to the disabled student on certain dates when she had not done so and that she had reported to various schools and libraries on certain dates when she had not done so. As petitioner acknowledges, her misconduct warrants punishment, since the disabled student was deprived of the services of a teacher for two months. Petitioner does not seek to set aside the findings of misconduct contained in the hearing officer's opinion, but only to modify the penalty imposed on her. She has acknowledged her error in judgment and has pledged to change her practices and never to repeat the error. There is no evidence that "petitioner could not remedy her behavior" (*see Bolt*, 145 AD3d at 451). The penalty of termination, we believe, is disproportionate to the level of petitioner's misconduct and exceeds the standards that society requires to be applied to this offense (*see Pell*, 34 NY2d at 234).

The cases relied upon by the dissent are distinguishable in that, among other things, none of them mention extraordinary mitigating circumstances such as those faced by petitioner (*see Matter of Davies v New York City Dept. of Educ.*, 117 AD3d 446, 447 [1st Dept 2014] [teacher failed to follow procedures and carry out duties, rendered incompetent service over two-year period and blamed others for her ineffectiveness]; *Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543 [1st Dept 2011] [non-resident New York City teacher enrolled two of her own children in City public schools, effectively stealing $98,000 in services from DOE over two-year period]; *Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823 [3d Dept 2005] [teacher's aide demonstrated a pattern of repeatedly taking excessive sick and paid leave despite two warnings not to do so and received leave time benefits as a result of his fraud]; *Matter of Hegarty v Board of Educ. of City of N.Y.*, 5 AD3d 771 [2d Dept 2004]).

This is not, as respondents would have it, a case of extended, intentional and self-serving misconduct or repeated and continuous neglect of duty, but rather an isolated instance of neglect occurring under circumstances of extraordinary personal hardship and involving a teacher who had an otherwise unblemished and longstanding record. Had Superstorm Sandy not upended her life, there is no indication that petitioner's wrongdoing would have occurred. As it is highly unlikely that the extraordinary situation presented in this case

will recur, the factors of general and specific deterrence do not come into play (*see Bolt*, 145 AD3d at 450-451, quoting *Pell*, 34 NY2d at 234). Concur—Moskowitz, Kapnick and Kahn, JJ.

Friedman, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: Contrary to the majority's determination, considering all relevant circumstances, including the nature and severity of the misconduct and the mitigating factors raised by petitioner, the penalty of termination is not so disproportionate to the charged offenses as to shock one's sense of fairness (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]). Therefore, I respectfully dissent.

Petitioner, a special education teacher, worked in the District 75 home instruction program, which provides instruction to children who are unable to attend school due to medical conditions. Home instruction teachers, with some exceptions (e.g., personal days beyond the allotted amount), are paid their full salaries regardless of the number of hours of daily instruction that they render to their students. Still, under an honor system, they must prepare a daily log showing the names of their students and the times they provided instruction to each of them, and a monthly time sheet that corresponds to the daily logs. They are also required to report any schedule changes to their supervisors and, if a student is unable to receive instruction for five consecutive days, to complete a form stating why the student was not receiving services.

In September 2012, petitioner was assigned to provide instruction for one hour a day, five days a week, to Student "A," an eight-year-old boy with cerebral palsy, who lived in the Rockaways. After Hurricane Sandy struck on October 29, 2012, Student A's family was temporarily displaced, and moved to Brooklyn. Petitioner was also displaced by the storm, and schools were closed from October 29 though November 2, 2012.

In January 2013, petitioner's supervisor was informed by Student A's social worker that he had not received instruction from petitioner since the hurricane. After an investigation was conducted, disciplinary proceedings were commenced charging that: (1) on 24 days from October 15 to December 19, 2012, petitioner submitted false or fraudulent daily logs and time sheets claiming that she provided instruction to Student A; (2) on 12 dates in December 2012, petitioner submitted false or fraudulent daily logs and time sheets that showed her reporting to various schools and/or libraries; (3) from October through December 2012, petitioner, with intent to defraud, made false

representations resulting in financial benefits; (4) as a result of the foregoing activities, petitioner received her full salary during October, November, and December 2012 for services she did not perform; and (5) because of petitioner's actions Student A was deprived of educational services.

Petitioner did not deny the first two specifications. At the hearing, she claimed that her paperwork was inaccurate because she completed her time logs before the fact, did not change them after the hurricane, and was not sure if she rendered services on any particular day. Petitioner also claimed that Student A's mother had asked her to suspend instruction until the family returned to the Rockaways.

Student A's mother testified that her son did not receive instruction when they were in Brooklyn or after they returned to the Rockaways in December. Petitioner told her that she could not instruct her son in the family's apartment due to her supervisor's safety concerns, and would not agree to provide the services at a library or other place. The mother, who thought petitioner was an excellent teacher who worked well with her son, never told petitioner to discontinue services. Petitioner's supervisor testified that he spoke with her after the hurricane and that she did not report any changes in her daily schedule, as required. Petitioner was never given permission to suspend services, and he did not receive petitioner's November and December timekeeping records until January 2013.

The hearing officer found that petitioner "failed to provide home instruction to Student A and submitted false and fraudulent documentation for services that she did not provide to him and that she gained a financial benefit by doing so." The hearing officer did not credit petitioner's excuses for her actions and found that petitioner offered no plausible reason for not discussing the situation with her supervisor. The hearing officer also found that petitioner used the disruption caused by Hurricane Sandy and Student A's dislocation to obtain free time for herself, when she was supposed to be delivering services, and, by taking advantage of the honor system at the expense of Student A, breached a fundamental tenet of the home instruction program.

Based on these findings, the hearing officer sustained specifications 1, 2, 4, and 5, and dismissed specification 3 as duplicative of 1, 2 and 4. In imposing the penalty of termination, the hearing officer stated that petitioner refused to take responsibility for her actions, sought to blame others, and failed to recognize how her actions affected Student A. While

considering petitioner's long tenure, unblemished record, and good reputation and the difficulties she faced after Hurricane Sandy, the hearing officer found that these mitigating factors did not "overcome her dishonesty, fraudulent conduct and neglect of duty over an extended period of nearly two months."

The majority holds that the penalty of termination shocks its sense of fairness and remands for the imposition of a lesser penalty. In support of this determination, the majority finds that petitioner's isolated instance of neglect, committed under extraordinary circumstances by a teacher who had an otherwise unblemished record, was "more a matter of lax bookkeeping" than misconduct, from which petitioner derived no benefit because she would have received the same salary regardless of how many students she instructed or how much time she spent with them. I disagree. The hearing officer carefully considered all of the evidence, and her credibility findings in favor of respondents' witnesses are entitled to deference (*see Matter of Nuchman v Klein*, 95 AD3d 645, 646 [1st Dept 2012], *lv denied* 20 NY3d 855 [2013]). There was more than adequate evidence of petitioner's fraudulent intent and "[c]onsidering petitioner's lack of remorse and failure to take responsibility for her actions, as well as the harm caused by petitioner's actions, the penalty of dismissal, even if there was an otherwise adequate performance record, cannot be said to shock the conscience" (*Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543, 544 [1st Dept 2011]).

Although petitioner was considered a good teacher and had an unblemished record over a 17-year period, she admittedly submitted false time sheets and continuously failed to provide instruction to a disabled child over a period of nearly two months (*see Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823, 824 [3d Dept 2005] [upholding termination for falsifying time sheets and a pattern of excessive leave time usage and abuse of leave time benefits despite "a long and previously unblemished record" (internal quotation marks omitted)]; *Matter of Hegarty v Board of Educ. of City of N.Y.*, 5 AD3d 771, 772 [2d Dept 2004] [upholding termination for a teacher who fraudulently submitted time sheets for educational services he never rendered]). Petitioner's intentional fraud was far more than "lax bookkeeping." In addition to preparing and submitting records that she knew were false, she also failed to advise her supervisor that she had stopped providing services to Student A.

Petitioner's intentional failure to keep her supervisor apprised of the child's status prevented the school district from

arranging for instruction by another teacher. As a result, Student A, who was supposed to receive one hour of instruction per day, missed approximately 40 to 45 hours during November and December 2012, and, according to his mother's testimony, became depressed and was behind his classmates as a result of the lack of instruction.

Contrary to the view of the majority, petitioner benefitted from her intentional misconduct, which allowed her to devote the time she should have been spending with Student A to other activities. If petitioner had notified her supervisor that Student A was no longer in Queens, she would have been assigned another student. The disruption caused by the storm does not explain petitioner's failure to notify her supervisor of any hardship she faced or confusion about how to proceed.

The hearing officer's conclusion that petitioner's conduct was intentional, that she took no responsibility for her actions and continued to blame Student A's mother, and that she failed to recognize the adverse effect of her conduct on a vulnerable and physically handicapped student further supports the penalty of termination (*see Matter of Davies v New York City Dept. of Educ.*, 117 AD3d 446 [1st Dept 2014]). As the hearing officer found, theft of services is a "serious offense," and petitioner's deception, which would not have been discovered but for the social worker's call, destroyed the trust that is essential to this field-based program dependent on the honor system.

The majority's reliance on *Matter of Bolt v New York City Dept. of Educ.* (145 AD3d 450 [1st Dept 2016]) is misplaced. In *Bolt*, in a single lapse in judgment, the teacher pointed out to several students that certain answers on their exams might be wrong, and suggested they take another look at them. She did not alter any of her student's answers or advise them what the correct answers were. In contrast, petitioner submitted false time sheets covering a nearly two-month period, during which she continuously failed to provide Student A with needed services, which benefitted her to the detriment of the child, and inflicted harm on the home instruction system. ■